

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37053-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHEN C. PEREZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — A jury found Mr. Perez guilty of attempted rape of a child in the second degree, and communicating with a minor for immoral purposes. On appeal, Mr. Perez challenges the sufficiency of the evidence to convict him. After reviewing the record, we find the evidence sufficient and affirm.

## FACTS

In July 2017, Mr. Perez responded via e-mail to an advertisement (ad) in the casual encounters section of Craigslist. The ad had been posted by Sargent Carlos Rodriguez as part of a Net Nanny Operation. The ad read: "Young looking for older daddy—w4m (Richland) I am young looking for older daddy to take care of this young baby girl. Be real. Be nice, your pic gets mine. Let's get lit! I have a daddy fetish and love to take showers, very clean. Let's talk. DDF." Report of Proceedings (RP) at 81-82.

Mr. Perez responded: "I would like more info.  I'm 45 YO and looking.  Thanks."

RP at 84.

Sgt. Rodriguez then responded:

I am in need of a daddy.  I ran away a while ago cuz my mom was a bitch.
Just hanging with friends for right now, but just want to have some fun and
forget about things.  If you want to have some fun with me, tell me how and
let's chat.  I'm getting a lot of responses, so get me your phone number and
we can talk.  If you don't like young fun then this isn't for you.  I'm 13 but
I am all woman and fine AF.

RP at 84-85.  The conversation went back and forth, and then Mr. Perez asked twice if

"she" was an undercover police officer.  RP at 86-87.

Sgt. Rodriguez's responses seem to have alleviated Mr. Perez's concerns because

he then asked, "What are you wanting to do?  When do you want to meet?"  RP at 88.

The conversation then moved to text and continued:

"Anna" (Sgt. Rodriguez):  This is Anna, we were talking about meeting
today, daddy.  How are you going to take care of me?  What's your name?

Perez:  Name is Steven, how are you?  What you mean by take care of?
What are you needing?

"Anna":  I don't have any money pretty much.

Perez:  So how much you needing?

"Anna":  Depends on what you want to do with me, daddy, I'm flexible. . . .
Well, tell me things you like to do.  If you want to do that, then come over.

Perez:  What you like to do or tell me what you won't do, might be easier.

"Anna":  No anal, have to use condoms.

2

Perez:  Darn, I love anal.

"Anna":  I just haven't do it.

Perez:  You need to try it, you might like it.

"Anna":  Maybe for a lot of money, like how much?  Does it hurt?

Perez:  Not if it's done right and slow for the first time, plus you got to relax and not tense up.

"Anna":  Can you show me maybe in an hour, but I don't do it for nothing.

Perez:  Where you want to meet?

"Anna":  There is a place near where I'm staying.  A store.  I have this place to myself tonight.

Perez:  Where are you staying or what store?

"Anna":  I'm near a freeway.

Perez:  Vague now, huh? . . .

"Anna":  I'm at my friend's apartment.  Have to find the address.  She says it's better to tell you the store first and then you send me a selfie when you get there so I know you don't flake and, oh, don't just show up whenever you want.

Perez:  What store then?

RP at 88-89, 91-93.  They went back and forth about a time and where she was staying and then discussed more details:

"Anna":  Do you have condoms?

Perez:  No, I don't.  Do I do BJs and then you?

"Anna":  And what are you thinking for donation?

Perez:  Not sure what you are wanting or what the usual.

3

"Anna": My friend gets 100 for normal. It has to be more than that. I'm actually really scared.

Perez: You want to start with just a BJ or we can just meet for a bit and chat. Do nothing. It's ok if we just chill and chat.

"Anna": Sure. $50. If you are cute maybe less, LOL??

RP at 95.

Anna then sent Mr. Perez to a 7-11 in Richland and asked him to send her a picture of himself at the store. RP at 98. The conversation went on:

"Anna": You gonna bring condoms or you can get them there?

Perez: I thought it was just a BJ or chatting.

"Anna": Oh, BJ is good. Are you clean? You good with the 50?

Perez: DDF.

"Anna": How big are you, and are you shaved?

Perez: Not that big, and trimmed.

RP at 98-99. The defendant then sent Anna a picture of himself in front of an ATM at the 7-11. Anna requested Mr. Perez bring her a banana and blue raspberry Slurpee. She instructed him to drive toward a road she would be walking along, and he said he would be in a four door white truck.

Mr. Perez then purchased a banana and blue raspberry Slurpee and drove as directed by Anna. Mr. Perez was pulled over by police in the truck he described a short distance from where he was to meet Anna and taken into custody. Police executed a

search warrant of the truck and found a banana and blue raspberry Slurpee, an unopened box of condoms, and a wallet with $103 in cash.

Mr. Perez's testimony at trial provided conflicting accounts of what happened. He testified that at the time he was pulled over by police, he was responding to a work call. He also said he just wanted to chat with Anna and make sure she was okay, but also admitted that he had initiated a conversation about certain sexual acts. He admitted to having used casual encounters before to meet his wife at the time, despite statements to the police at the time of his arrest that he was unfamiliar with it. He further admitted that in his interview with police following his arrest, apparently still unaware of the nature of the sting operation, he indicated that he had been texting with a girl named Anna and referred to her throughout the interview as "Anna." Additionally, he admitted to asking the purported thirteen-year-old for a "blow job." RP at 250, 265-66. Mr. Perez's testimony at trial was the sole evidence presented on behalf of the defense.

The jury found Mr. Perez guilty of attempted rape of a child in the second degree and communication with a minor for immoral purposes. He was sentenced to 84 months to life in prison. The defendant then filed a notice of appeal.

ANALYSIS

Before we consider the evidence presented at trial, we first address Mr. Perez's assignment of error on appeal. Mr. Perez frames the issue in this case as trial court error for denying his motion to dismiss at the close of the State's evidence. As the State points

out however, a defendant who presents evidence after a court's denial of their motion to dismiss waives their right to appeal the denial of the motion to dismiss. *State v. Allan*, 88 Wn.2d 394, 396, 562 P.2d 632 (1977). Because the record is sufficiently developed, we will review to determine if the evidence is sufficient to support the convictions.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence and inferences from it in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When a defendant challenges the sufficiency of the evidence, he or she admits the truth of all of the State's evidence. *Id.* Credibility determinations are for the trier of fact and are not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). The court must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

"A person is guilty of rape of a child in the second degree when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.076(1). "Attempt" crimes require proof of intent to commit a specific crime along with a substantial step toward the commission of that crime. RCW 9A.28.020(1). In the context of sting operations, where the victim is a fictitious character and the defendant is charged with attempted rape of a child in the

6

second degree, the prosecution must prove: (1) knowledge of the age of the victim, (2) intent to have sexual intercourse with the victim, and (3) a substantial step toward the commission of the crime. *State v. Johnson*, 173 Wn.2d 895, 904, 270 P.3d 591 (2012). "Sexual intercourse" includes its ordinary meaning as well as penetration of the vagina or anus, however slight, or sexual contact involving the sex organs of one person and the mouth or anus of another person. RCW 9A.44.010(1). "[A] person who communicates with a minor for immoral purposes, or a person who communicates with someone the person believes to be a minor for immoral purposes, is guilty of a gross misdemeanor." RCW 9.68A.090(1).

On appeal, Mr. Perez argues that the evidence was insufficient to show that he knew or believed the person he was communicating with was under the age of 14. When the perceived victim is fictitious, the State must prove intent to have sexual intercourse with a person under 14 years of age through "publication and receipt" of the information about the perceived victim's age. *Johnson*, 173 Wn.2d at 908. In other words, proof that the perceived victim communicated her age and the defendant received this information. *Id*. The State must then prove that the defendant intended to have sexual intercourse with this victim. *Id*. In *Johnson*, the court determined that where both of the fictitious victims had told the defendant they were 17, the defendant had acknowledged their ages, and the defendant had asked them to work as prostitutes, there was sufficient evidence to prove knowledge. *Id*. at 898, 909.

7

Here, the evidence is sufficient to show that Mr. Perez received information that the perceived victim was under the age of 14. Mr. Perez responded to an ad stating, "I am young looking for older daddy to take care of this young baby girl." Baby girl is a term commonly used when adults are looking for sex with children. Anna stated in a message to Mr. Perez that she was 13 years old and that she had run away from her mom. Mr. Perez later asked her twice if she was an undercover police officer, indicating he knew she was underage. Moreover, in his conversation with police following his arrest, Mr. Perez kept saying he just wanted to talk with "her," indicating that he believed he was talking to Anna.

Mr. Perez also challenges the sufficiency of the evidence that he intended to have sexual intercourse with the perceived victim. At trial, he testified that he was just planning to bring Anna a Slurpee and chat. However, Mr. Perez responded to an ad in the casual encounters section of Craigslist that he had used before, a section for people looking for sex with no strings attached. The language used in the ad indicated Anna was a young girl looking to have sex with older men. The conversation between Mr. Perez and Anna included him talking to her about how he enjoyed anal sex, asking if she was willing to do oral sex, talking to her about the size and grooming state of his penis, and assuring her that he was disease and drug free. There was also an agreement on a price of $50 for oral sex. Although Mr. Perez stated earlier in the conversation that he did not have condoms, police later found a sealed box of condoms in his truck, indicating he had

8

bought some on the way to meet Anna. At trial, Mr. Perez admitted that he believed the ad referred to a young girl calling an older man daddy and that he specifically asked a purported 13-year-old for a blow job.

Finally, Mr. Perez challenges the sufficiency of the evidence that he took a substantial step toward the commission of a particular crime. Mr. Perez went to the 7-11 as directed by Anna and sent her a picture of himself there. He then purchased her the Slurpee she had asked for and proceeded to drive to where they had arranged to meet. Police picked him up near the apartments where Anna said she was staying. When police searched his vehicle, they found a box of unopened condoms and $103 in cash in his wallet. This evidence was sufficient to prove a substantial step toward the commission of this crime.

In his statement of additional grounds, Mr. Perez raises several additional issues. We reject his impossibility argument because neither crime requires the existence of an actual victim. *See* RCW 9.68A.090; *Johnson*, 173 Wn.2d at 900-01. He also claims his trial attorney was constitutionally ineffective and the trial court abused its discretion by precluding an entrapment argument. Because he fails to provide citations to the record or authority to support these arguments, we will not review them on appeal. RAP 10.3(a)(6); *State v. Elliot*, 114 Wn.2d 6, 15, 785 P.2d 440 (1990).

Finding the evidence sufficient, we affirm Mr. Perez's convictions for attempted rape of a child in the second degree and communicating with a minor for immoral purposes.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.